# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON
_____

| | | |
|---|---|---|
| **HOWARD A. WOODS,** | ) | Shelby County Circuit Court |
| | ) | No. 65172 T.D. |
| Plaintiff/Appellant. | ) | |
| | ) | |
| VS. | ) | C. A. NO. 02A01-9510-CV-00218 |
| | ) | |
| **MUTUAL OF OMAHA,** | ) | |
| | ) | |
| Defendant/Appellee. | ) | |
| | ) | |
| And | ) | |
| | ) | |
| **CNA INSURANCE COMPANY,** | ) | |
| **and EASTWOOD HOSPITAL**, | ) | |
| | ) | |
| Defendant. | ) | |

FILED

**October 9, 1996**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

_____

From the Circuit Court of Shelby County at Memphis.
**Honorable Robert A. Lanier, Judge**


**Howard A. Woods**, Pro Se
Plaintiff/Appellant.


**Philip E. Mischke**,
WYATT, TARRANT & COMBS, Memphis, Tennessee
Attorney for Defendant/Appellee, Mutual of Omaha.


OPINION FILED:

**AFFIRMED**


                                   **FARMER, J.**


**CRAWFORD, P.J., W.S.** : (Concurs)
**LILLARD, J.** : (Concurs)

This case concerns the validity of a "Compromise Settlement Release" executed by the appellant, Howard A. Woods (Woods), in favor of the appellee, Mutual of Omaha (Omaha). Woods challenges its validity on the ground of mental incapacity. The trial court entered summary judgment in favor of Omaha and Woods has appealed. For reasons hereinafter expressed, we affirm.

In March 1991, Omaha issued Woods two insurance policies (medical and disability). During the processing of a claim filed by Woods, Omaha discovered certain misrepresentations on Woods' application for insurance which, according to Omaha, invalidated the policies by their own terms. Omaha informed Woods in November 1991 that the policies were "cancelled from the issue date." In January 1992, Woods filed suit against Omaha alleging wrongful termination of his insurance. On March 27, 1992, Woods executed the release at issue here which, in sum, releases Omaha from all claims arising out of the aforementioned insurance policies in consideration for $12,000. A check for that amount was negotiated by Woods on March 30, 1992. The release expressly provided for the dismissal with prejudice of Woods' lawsuit.

In June 1994, Woods filed the present action in general sessions court again claiming that Omaha had wrongfully terminated his insurance.[1] The suit was apparently dismissed and Woods appealed the decision to circuit court. Thereafter, Omaha filed a motion "to dismiss or in the alternative for summary judgment," asserting that the action was barred by the applicable statute of limitations and the doctrines of *res judicata* and accord and satisfaction. The affidavit of Janet Stewart, Omaha's second vice president and counsel, was submitted on its behalf. The affidavit set forth the terms of the release as heretofore specified and included a copy of the release. The trial court granted Omaha's motion based on the release.

Woods then filed a "Motion for New Trial," asserting that he had, since entry of the summary judgment, "gathered [a]ffidavits from his doctors to clarify his mental and physical condition on 3/27/92 . . . ." No affidavits were attached to the motion. Woods additionally filed a "Motion to Set Aside" the ruling. The affidavit of Dr. Dale Foster was attached, which states, as

---

[1]Woods filed suit against various defendants; however, the judgment before us enters summary judgment in favor of Omaha only and was rendered final by the trial court in accordance with Rule 54.02 T.R.C.P. Thus, Omaha is the only Appellee for purposes of this appeal.

relevant here:

> I am a psychologist with the Germantown Psychological Associates, P.C. . . .
>
> Mr. Woods is currently under my care and has requested that I inform you concerning the history of his psychological condition as indicated by his treatment while under my care.
>
> Mr. Woods first came to me on April 6, 1992 presenting with paranoia, psychotic thinking, numerous somatic complaints, and extreme anxiety.
>
> He has received a diagnosis of Schizophrenia, Paranoid type . . . .
>
> It is my opinion that, due to his mental state at that time, he was not capable of entering into a contract with full knowledge and ability to understand the consequences of that contract.

The record next includes a document filed by Woods entitled "Amend[ed] Complaint," which includes the affidavits of Dr. George Chu, addressing Woods' physical condition while hospitalized in April and May 1991 as the result of an automobile accident, and Dr. John Howser, which also addresses Woods' physical condition subsequent to the accident. Woods also filed a "Motion to Extend Time to File Beyond the Allotted Time After a Ruling," so as to file additional expert affidavits regarding his mental capacity "in 1992," and various other motions. After entertaining the motions, the trial court entered an order denying Woods' motion to set aside.

Woods thereafter filed additional motions, with the court subsequently entering an "Order on Motions and Final Judgment as to Mutual of Omaha." The judgment, from which this appeal lies, grants Woods' requests to file a copy of his medical records from Southeast Mental Health Center and to reconsider the summary judgment entered in favor of Omaha. The judgment further reflects the trial court's denial of Woods' motion to set aside the summary judgment after its consideration of the medical records and "all other documents submitted by [Woods], . . ."

The issue before us is whether the trial court was correct in entering summary judgment for Mutual of Omaha. In ruling on motions for summary judgment, we are to consider the matter in the same manner as a motion for a directed verdict made at the close of the plaintiff's proof, i.e., all evidence must be viewed in a light most favorable to the motion's opponent and all

legitimate conclusions of fact must be drawn in that party's favor. It is only when there is no disputed issue of material fact that summary judgment should be granted by the trial court and sustained by the court of appeals. *E.g., Fly v. Cannon*, 813 S.W.2d 458, 460 (Tenn. App. 1991). The party seeking summary judgment carries the burden of persuading the court that no genuine and material factual issues exist and that he is, therefore, entitled to judgment as a matter of law. Once this is shown by the moving party, then the nonmovant must demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute warranting a trial. *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993).

As heretofore noted, the trial court granted Omaha's motion for summary judgment based on the release executed by Woods, who now challenges its validity upon the ground that he was mentally incompetent to execute it. The mental incapacity required to invalidate a contract was discussed by the middle section of this Court in *Roberts v. Roberts*, 827 S.W.2d 788 (Tenn. App. 1991), when stating:

> No published Tennessee authority is found which defines [the] degree of mental incapacity required to invalidate a contract. . . .
>
> In 17 C.J.S. Contracts § 133(1)(e), pp. 860, 861, 862, is found the following text:
>
>> The test of mental capacity to contract is whether the person in question possesses sufficient mind to understand, in a reasonable manner, the nature, extent, character, and effect of the act or transaction in which he is engaged; the law does not gauge contractual capacity by the standard of mental capacity possessed by reasonably prudent men. It is not necessary to show that a person was incompetent to transact any kind of business, but to invalidate his contract it is sufficient to show that he was mentally incompetent to deal with the particular contract in issue, . . .
>>
>> On the other hand, to avoid a contract it is insufficient to show merely that the person was of unsound mind or insane when it was made, but it must also be shown that this unsoundness or insanity was of such a character that he had no reasonable perception or understanding of the nature or terms of the contract. The extent or degree of intellect generally is not in issue, but merely the mental capacity to know the nature and terms of the contract.
>>
>> . . . there must, to invalidate the contract, be

at the time thereof such impairment of reasoning powers as to make the person incapable of acting rationally in the transaction involved, or such mental unsoundness as occasions an inability to comprehend the subject of the contract and its nature and probable consequences, or as renders the individual incapable of understanding and acting with discretion in the business at hand; and it has been held that to invalidate his contract there must be an entire loss of a person's understanding as respects such transaction.

In the final analysis, contractual capacity is a question to be resolved in the light of the facts of each case and the surrounding circumstances.

*Roberts*, 827 S.W.2d at 791-92.

In view of *Roberts*, we hold that in order for Woods to defeat Omaha's motion for summary judgment, the record before us must establish his mental incompetency with respect to the particular contract in issue. We find nothing in this record, however, specifically addressing this concern. The records of Southeast Mental Health Center include an "intake summary," dated March 6, 1992, which references Woods' overall mental status at that time, as does another psychological evaluation of Woods dated January 4, 1994. We find both of these assessments of little import in determining whether Woods had the capacity to execute the release in question. The record also includes the Department of Health and Human Service's decision that Woods is disabled for purposes of the Social Security Act. The decision states that Woods "has been disabled since April 29, 1991, . . . He has a psychotic disorder not otherwise specified, possible paranoid schizophrenia, borderline intellectual functioning, carpel tunnel syndrome, and cervical facet syndrome, which are considered to be 'severe' under the Social Security Regulations." As is apparent, the Department's decision does not concern Woods' capacity to understand and appreciate the contract in question. The only evidence in the record addressing Woods' capacity to enter into a contract is the affidavit of Dr. Foster, which we find inadequate on the issue. Dr. Foster's affidavit establishes that he did not begin treating Woods until April 6, 1992, which was after the agreement's execution. Moreover, the affidavit refers only to Woods' general inability to enter into a contract and does not make specific reference to the contract at issue.

We conclude that when the evidence is viewed in a light most favorable to Woods,

no genuine issue of material fact is created regarding his mental capacity to execute the release on March 27, 1992.  The judgment of the trial court is, accordingly, affirmed.  Costs are assessed against Howard A. Woods, for which execution may issue if necessary.


                                     _____

                                     FARMER, J.


_____

CRAWFORD, P.J., W.S. (Concurs)


_____

LILLARD, J. (Concurs)